UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN L. ROBINSON,
    Petitioner,

v.      No. 3:12-cv-1323 (JAM)

LEO C. ARNONE, et al.,
    Respondents.

**RULING DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Shawn Robinson brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is serving a sentence of 45 years of imprisonment following his conviction in a Connecticut state court on multiple charges arising from his attack on a correctional officer during a prison riot in 1990. He now contends that he had conflicts with and did not have constitutionally effective assistance of counsel at trial, that he was wrongly denied access to personnel files of correctional officers who testified against him, and that he was convicted by a jury from which minority jurors were systematically excluded. Because it is clear that the Connecticut state courts did not unreasonably apply federal law in rejecting all of these claims, I will deny the petition.

**BACKGROUND**

On April 19, 1990, petitioner was present during a riot among inmates at the Connecticut Correctional Institution at Somers. According to the State's trial evidence, petitioner slashed a correctional officer on the neck with a sharp metal instrument. Petitioner then put the weapon into a paper bag and walked away. Although the officer who was attacked did not see who did it, a second correctional officer testified that he saw the attack. Still a third correctional officer testified that he saw petitioner with a dark object in his hand, and a fourth correctional officer

heard petitioner urge other inmates to kill him shortly after the attack on the first correctional officer. *See State v. Robinson*, 227 Conn. 711, 715-16 (1993).

Petitioner was tried before a jury on charges of first- and second-degree assault, rioting at a correctional institution, possession of a weapon or dangerous instrument in a correctional institution, and being a persistent serious felony offender (having prior robbery convictions). He was convicted on all charges except first-degree assault and was sentenced to a total effective sentence of 45 years of imprisonment. *Id.* at 713-14. His conviction was affirmed on direct appeal, *id.*, and he has filed multiple state petitions for writs of habeas corpus that have been denied. Doc. #42 at 3; Doc. #47 at 2-3; *see also Robinson v. Warden*, 2009 WL 1333799 (Conn. Super. 2009); *Robinson v. Commissioner of Correction*, 129 Conn. App. 699 (2011). Petitioner has now filed the instant federal habeas corpus petition that raises several claims.

## DISCUSSION

Federal courts have very limited authority to overturn state court convictions. A state court defendant who seeks relief by way of a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must show that his state court conviction was rendered by means of a very clear violation of federal law—*i.e.*, that the state court's adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see also Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (reviewing governing standard).

This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170,

2

181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). As the Supreme Court has more recently explained, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct 1372, 1376 (2015) (*per curiam*).

### *Disputes and Disagreements with Trial Counsel*

Petitioner's primary argument is that the Connecticut state courts unreasonably applied federal law with respect to the trial court's alleged mishandling of his disputes and disagreements with his trial counsel (Attorney Brian Karpe) during the course of trial. The specifics of these disagreements were described at length by the Connecticut Supreme Court as follows:

> At trial, the defendant had a number of disputes with his attorney, Brian Karpe, and on several occasions made known to the court that he did not want Karpe to continue to represent him. While the jury was being selected, the defendant moved to "fire" Karpe. The defendant explained that he and Karpe had disagreed over certain things "in the General Statutes and the Practice Book dealing with my case." Karpe told the court that he and the defendant had had disagreements "on some trial tactics." In response, the trial court explained to the defendant that his counsel had control over trial strategy and tactics. The trial court further remarked that "from what I have seen of Mr. Karpe's representation, I see nothing that would cause me to fire him and replace him with another attorney." The defendant then complained that Karpe had not come to prison to consult with him about the case. He also stated that he wished to file a motion that some of the state's remarks to the prospective jurors were biased. In response, Karpe moved to withdraw due to the defendant's expressions of dissatisfaction with his services. The court denied Karpe's motion, explaining that there was no reason, especially at that point in the trial with the jury being selected, to remove him from the case. The defendant, however, commented that he felt that Karpe had no desire to try his case. The court reminded the defendant that, despite his persistent protests, it had denied his motion to dismiss Karpe. The court then proceeded with jury selection.
>
> Two days later, just as court convened, Karpe again moved to withdraw from the case because the defendant had informed him that he did not believe that Karpe was prepared. Karpe represented that the defendant had stated that he believed that he could have questioned the prospective jurors more effectively than Karpe, and that the defendant had "made allegations that I'm trying to railroad him." Karpe also stated that he believed that the attorney-client relationship had broken down and that he should be excused from further representation of the defendant. The court informed the defendant

3

that, if he was dissatisfied with Karpe's representation, he had a right to represent himself, if he wished to do so. The defendant responded that he did not wish to represent himself. He said he only desired "good representation," and complained that Karpe had failed to obtain items he had previously requested, such as exact copies of disciplinary reports, medical records, and all of the incident reports pertaining to the events of April 19, 1990. Karpe told the court that the state had given him access to the incident reports and that he had dictated these and provided the defendant with copies of transcribed versions. The trial court then stated that it was treating the dialogue among itself, the defendant and Karpe as a motion to replace Karpe with new counsel. It then denied the motion.

      The next day, during jury selection, Karpe again moved to withdraw because the defendant refused to speak with him. The trial court denied the motion. The defendant then turned and faced the rear of the courtroom during the voir dire of prospective jurors, claiming that he had no voice in the questions that were being asked of the jurors. Later, after the jury had been selected, at the outset of the state's presentation of evidence, Karpe again moved to withdraw. He told the trial court that the defendant had threatened that if Karpe was trying to "railroad" him, he "would certainly stop it." The trial court denied the motion and explained to the defendant that Karpe was acting in his best interests and that it would be to his advantage to cooperate with his counsel. Karpe then told the court that the defendant had indicated to him that he would prefer to represent himself. The court asked the defendant if he wished to proceed pro se. The defendant did not respond, and the court interpreted his silence as indicating that he did not wish to do so.

      After the defense had rested, the defendant became agitated. He stated that he wanted to fire Karpe "because I ain't resting nothing yet." He told the court that he wished to call other witnesses and to return to the witness stand. The court told the defendant that it could not honor his requests. The defendant then left the courtroom with Karpe. Karpe returned to the courtroom shortly thereafter and apologized for his client's behavior. The court then asked Karpe whether he had spoken with his client after they left the courtroom together. Karpe responded that he had, and explained to the court that the defendant was upset and had elected to absent himself from the trial. The defendant did not attend the trial for the rest of that day, but did appear for closing arguments on the following day.

*State v. Robinson*, 227 Conn. at 722-24.

The Connecticut Supreme Court rejected defendant's argument. It noted that a trial judge has substantial discretion with respect to complaints of a defendant about his attorney, especially complaints that are raised on the eve of or during trial. *Id.* at 725-26. The court further noted that most of petitioner's complaints were about matters of trial strategy within the discretion of

defense counsel and concluded that the trial court had made an adequate inquiry into petitioner's complaints about counsel. *Id.* at 726-27.

The Connecticut Supreme Court concluded that "[v]iewing the entire record, we regard the trial court's tolerance of the defendant's complaints concerning his counsel as evincing a high degree of judicial solicitude toward the defendant's concerns." *Id.* at 727. In addition, the court observed that "[d]espite the defendant's repeated attempts to thwart his counsel's efforts to represent him, it appears that the attorney-client relationship endured," and that "[w]hatever breakdown occurred in the attorney-client privilege in this case was largely the result of the defendant's own actions and threats." *Id.* at 727-28.

Although petitioner disagrees with the Connecticut Supreme Court's resolution of this claim, he has fallen well short of showing that its resolution of this very factbound issue amounts to an unreasonable application of federal law as that law has been determined by the United States Supreme Court. The Connecticut Supreme Court relied in part on Second Circuit precedent to evaluate what response is required from a trial court when a defendant has a "seemingly substantial complaint about counsel." *Id.* at 727 (citing *McKee v. Harris*, 649 F.2d 927 (2d Cir. 1981)). As the court correctly noted, despite the tension between petitioner and his trial counsel, petitioner's "counsel still managed to articulate the [petitioner's] concerns and make motions that" petitioner had requested. *Id.* at 272. The court further observed that *McKee* held that a "defendant is not entitled to demand a reassignment of counsel simply on the basis of a breakdown in communication, which he himself induced." *Id.*

Notably, the decision in *McKee* was from the Second Circuit and not the United States Supreme Court. Even if the Connecticut courts had unreasonably applied *McKee*, I could not

grant habeas corpus relief under § 2254 unless the state courts had unreasonably applied settled Supreme Court precedent. *See Woods*, 135 S. Ct. at 1378.

Petitioner's brief relies on the Second Circuit's decision in *United States v. Morrissey*, 461 F.2d 666 (2d Cir. 1972), but in that case the Second Circuit did no more than make clear that a trial judge must inquire into a defendant's complaints about counsel and further noted that "the right to counsel cannot be . . . manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Id.* at 669 (internal quotation marks and citation omitted); *see also United States v. John Doe No. 1*, 272 F.3d 116, 122-26 (2d Cir. 2001) (fuller description of obligations of trial court to inquire into disagreements between defendant and counsel).

It is evident here that the trial court in petitioner's case did in fact inquire into petitioner's disagreement with his counsel. Petitioner has not identified any United States Supreme Court precedent that required a greater level of inquiry or that required the trial court to have automatically appointed replacement counsel upon request (or, as petitioner suggested at oral argument, to have recessed the trial or appointed independent counsel to meet with petitioner).

Petitioner also cites *Cuyler v. Sullivan*, 446 U.S. 335 (1980). But *Cuyler* does not dictate a different result here, because *Cuyler* involved a wholly different factual and legal context involving a trial court's duty to inquire into potential conflicts of interest that stem from an attorney's simultaneous representation of multiple criminal defendant clients. *Id.* at 346-50. In short, petitioner has not shown that the Connecticut state courts' denial of his claim concerning his disagreements with trial counsel amounted to an unreasonable application of federal law as determined by the United States Supreme Court.

*Ineffective Assistance of Counsel*

Petitioner claims that his trial counsel rendered constitutionally ineffective assistance of counsel. A claim of ineffective assistance of counsel is reviewed in light of the well-established, two-part standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show deficient performance—that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms"—and, second, a defendant must show that this deficient performance caused prejudice. *Id.* at 687–88.

As to the showing of deficient performance, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Id.* at 689. As to the showing of prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* test itself is deferential to the strategic choices of counsel, and when a *Strickland* claim is presented by way of a state court prisoner's federal petition for writ of habeas corpus under 28 U.S.C. § 2254(d), a federal court's review of an ineffective assistance claim becomes "doubly deferential" to the determinations of trial counsel and the state courts. *See Woods*, 135 S. Ct. at 1376 (internal quotation marks and citation omitted).

Petitioner raises two claims of ineffective assistance of his trial counsel. First, he argues that Attorney Karpe failed to adequately and timely object when the prosecution impeached petitioner not only with evidence of petitioner's prior robbery convictions but also with evidence that he had been sentenced to 15 years of imprisonment for those convictions.[1] On direct appeal,

---

[1] As the record shows, the State elicited the length of petitioner's sentence only after petitioner wrongly or mistakenly denied on cross-examination that he had been previously convicted. Petitioner's claim is that his trial

7

the Connecticut Supreme Court rejected defendant's argument that the admission of this sentencing information was improper and further concluded that any error from its admission was harmless, because there was no question that the impeachment with the robbery convictions themselves was proper and because the jury already knew that defendant was serving time in prison. *Robinson*, 227 Conn. at 737-38.

Second, petitioner argues that Attorney Karpe failed to prevent the admission of a prior prison disciplinary ticket that accused him of possessing a metal shank several months before the incident for which petitioner was on trial. This evidence was admitted only after petitioner had denied on cross-examination that he had ever possessed a shank.

The record is somewhat murky whether petitioner fully raised and exhausted either of these two specific ineffective assistance claims before the Connecticut courts. Petitioner did raise certain challenges to the effectiveness of his trial counsel, and a state habeas court denied those challenges by oral ruling in 2012. *See* Doc. #47 at 9. On the assumption that these claims were properly exhausted, I conclude in light of the highly deferential standard that applies to the review of such claims in the context of 28 U.S.C. § 2254 that the state courts did not unreasonably apply the standards governing constitutional claims of ineffective assistance of counsel. The impeaching evidence at issue was properly relevant to and prompted by petitioner's own trial testimony, and petitioner has not shown why any objection would necessarily have had merit, much less why any error caused unfair prejudice.

### *Right to Present Defense / Access to Personnel Files*

Petitioner next argues that his constitutional right to present a defense was violated when he was denied the right to review the personnel files of each of the four correctional officers who

---

counsel should have realized that he was confused about what a "conviction" was and interceded before the State adduced additional information about the convictions to substantiate its claims that the convictions had occurred. *See* Doc. #46 at 8-10.

testified against him at trial. He subpoenaed their personnel files for the stated purpose of reviewing them for information pertaining to past complaints by these correctional officers against him. *See Robinson*, 227 Conn. at 744. Instead of allowing defense counsel to review each of the officers' files, the trial judge conducted an *in camera* review of the files and disclosed portions of the files that were deemed relevant to petitioner's request. *Ibid.* Petitioner did not object at the time to the trial court's decision to conduct an *in camera* review. *Id.* at 744-45. Petitioner, however, contended on direct appeal that the denial of access to these files was a violation of his Sixth Amendment constitutional right to confront witnesses against him. *Id.* at 744. The Connecticut Supreme Court rejected this claim and did so after conducting its own review of the personnel files, concluding that "the trial court did not abuse its discretion by withholding any information in those files." *Id.* at 745.

Petitioner now contends that he was denied his right to present a defense and relies on the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 432; *see also United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 91 (2d Cir. 2014).

The *Brady* rule requires disclosure not only of evidence that is exculpatory in the traditional sense (*e.g.,* evidence that it was another person who committed the crime in question), but also impeachment information (*e.g.,* evidence of a witness's bias or lack of credibility). *See id.* That said, the *Brady* rule does not require disclosure of all information that might prove helpful to a criminal defendant. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). Instead, what *Brady* requires is the disclosure of *materially* exculpatory/impeachment information—that

9

"a prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).

The *Brady* rule may well apply to compel disclosure of materials from a testifying law enforcement officer's personnel file. Nevertheless, the rule's application in this context has proved controversially difficult to enforce and administer. *See generally* Jonathan Abel, *Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team*, 67 Stan. L. Rev. 743 (2015).

Here, even assuming that petitioner properly exhausted his *Brady* claim in the Connecticut courts,[2] it is apparent that the Connecticut Supreme Court's resolution of petitioner's claim did not amount to an unreasonable application of *Brady* or, more generally, the right of a criminal defendant to present a defense. To the contrary, the record makes clear that both the trial court and the Connecticut Supreme Court reviewed the personnel files to ensure production of information that was responsive to petitioner's stated reason for seeking review of the files. There is nothing to suggest that any material information was withheld from petitioner that conceivably could have led to a different outcome at trial.

At oral argument, petitioner contended that the Constitution affords the right for defense counsel to conduct an independent review of the personnel files of law enforcement officers to make an independent determination of what information within these files would be helpful to the defense. This argument has some practical and intuitive appeal, because of the superior ability of defense counsel to know what information is truly of value in light of the particulars of

---

[2] It appears from the Connecticut Supreme Court's ruling that petitioner's claim was solely under the Confrontation Clause of the Sixth Amendment, rather than under the Due Process Clause of the Fifth Amendment from which the *Brady* rule arises. I will assume for purposes of this ruling that petitioner properly exhausted his *Brady* claim in the Connecticut state courts.

the defense that counsel plans to present. But the argument runs contrary to long established law. In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the Supreme Court conclusively rejected a defendant's argument that—rather than have a prosecutor or trial court conduct an *in camera* review of government files for exculpatory information—defense counsel should be permitted to do so. "A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files," and "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id.* at 59.

Similarly, the Second Circuit has ruled that "[t]ypically, the prosecution itself makes the initial determination as to what evidence must be disclosed to the defense" and that only "in some circumstances the trial court should not rely on the Government's representations as to the materiality of potential impeachment evidence, but should instead undertake an independent *in camera* review of relevant Government files to determine materiality." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). Otherwise, "criminal defendants have no constitutional right to know the contents of Government files in order to present arguments in favor of disclosure." *Id* at 583. In light of these precedents, petitioner has not shown that the Connecticut state courts' denial of his claim of access to personnel files amounted to an unreasonable application of federal law as determined by the United States Supreme Court.

*Jury Composition*

Petitioner contends that his constitutional rights were violated because there were no African Americans or Latinos in the pool of more than 60 persons who were summoned as part of the jury venire for his trial. He argues that the lack of minority jurors was the result of systematic exclusion in violation of *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Significantly, however, petitioner did not pursue this federal constitutional challenge before the Connecticut

Supreme Court; to the contrary, petitioner "abandoned his federal constitutional claim" on direct appeal and pursued only a state constitutional challenge to the composition of the jury pool. *Robinson*, 227 Conn. at 720. The federal claim therefore has not been exhausted and has also been procedurally defaulted in the state courts. If a claim has not been exhausted in the state courts, I cannot grant relief under § 2254. 28 U.S.C. § 2254(b)(1); *see also Chrysler*, 806 F.3d at 116. And if it is clear a petitioner under § 2254 has procedurally defaulted an unexhausted claim, a dismissal with prejudice is appropriate because a default is an adequate and independent state ground for decision. *See Junulawicz v. CT Comm'n of Correction*, 2015 WL 5797015, at *3 (D. Conn. 2015). Although a procedural default may be excused in the event a well-founded claim of actual innocence, petitioner has made no more than a one-page, conclusory claim of actual innocence that cites no evidence and is insufficient to surmount a procedural bar. *See House v. Bell*, 547 U.S. 518, 537-40 (2006). I will therefore dismiss petitioner's claim challenging the composition of his jury.

## CONCLUSION

The Petition for Writ of Habeas Corpus is DENIED. Because petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), no certificate of appealability shall enter. The Clerk is directed to enter judgment in favor of the respondents and to close this case.

It is so ordered.

Dated at New Haven this 19th day of January 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge